UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                          Case No. 13-cr-20813

v.                                          Honorable Thomas L. Ludington

D-1 ANGELO ADAM GONZALEZ,
D-3 DAVID JUAREZ,

                Defendants.

_____/

**ORDER DENYING MOTION TO EXCLUDE EVIDENCE OR ALTERNATIVELY FOR
A SEPARATE TRIAL, DENYING WITHOUT PREJUDICE JOINDER IN MOTION TO
EXCLUDE EVIDENCE, DENYING MOTION TO EXCLUDE PROPOSED VOICE
IDENTIFICATION EVIDENCE, DENYING MOTION TO EXCLUDE ADMISSION OF
PHOTOGRAPHS, DENYING JOINDER IN MOTION TO EXCLUDE ADMISSION OF
PHOTOGRAPHS, DENYING MOTION TO SUPPRESS, GRANTING MOTION TO
EXCLUDE EVIDENCE OF STATEMENTS, AND GRANTING MOTION FOR
DETERMINATION OF STATUS AS A CAREER OFFENDER**

Defendant Angelo Adam Gonzalez was indicted with Defendant Jonathan Ortiz
Coronado on November 6, 2013 on one count of Conspiracy to Distribute Cocaine, 21 U.S.C. §§
846 and 841(a)(1). ECF No. 14 at 1. Defendant David Juarez was later joined in a superseding
indictment on February 12, 2014 on the existing count of Conspiracy to Distribute Cocaine and
an additional count of being a Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1). ECF
No. 22.

Defendants Gonzalez and Coronado were arrested on October 3, 2013 following a traffic
stop of their vehicle in Saginaw, Michigan during which the police uncovered drug paraphernalia
and other contraband. During the stop Coronado fled. When he was apprehended two empty
cocaine wrappers were found on in his possession. When the police searched the vehicle

Gonzalez and Coronado were in they uncovered a firearm and two cell phones. Law enforcement obtained a warrant to search the cell phones and found a number of photographs of Gonzalez with other individuals, cash, and firearms.

On that same day, October 3, 2013, Gonzalez called Defendant Juarez from Saginaw County Jail. The phone call was recorded and during the call Gonzalez describes the arrest to Juarez. Gonzalez and Juarez then discussed the location of other "stuff" and expressed concern about being connected to the contraband from the vehicle stop earlier in the day. Three weeks later, on October 24, 2013, Defendant Juarez was arrested following an unrelated controlled drug buy.

Between June 11, 2014 and June 19, 2014, Defendants Gonzalez and Juarez filed a series of motions requesting various forms of relief from the Court. Gonzalez filed the following: Motion to Exclude Admission of Photographs (ECF No. 45); Motion to Exclude Evidence Relating to Co-Defendant Juarez (ECF No. 46); Motion for Determination of Status of Defendant as Career Offender (ECF No. 47); Motion to Exclude Proposed Voice Identification Evidence of Witness David McGovern (ECF No. 48). Juarez's motions are as follows: Motion to Suppress (ECF No. 50); Motion to Exclude Evidence of Statements by Co-Defendants (ECF No. 51); Joinder in Motion to Exclude Admission of Photographs (ECF No. 53); Joinder in Motion to Exclude Evidence Relating to Co-Defendant Juarez (ECF No. 54).

**I.**

In the February 12, 2014 indictment, the government alleges that Defendants Gonzalez, Coronado, and Juarez "beginning on a date unknown and continuing until on or about October 6, 2013 . . . knowingly and voluntarily combined, conspired, confederated and agreed together . . . to distribute cocaine and possess with intent to distribute cocaine" in violation of 21 U.S.C. §§

846 and 841(a)(1). ECF No. 22 at 1-2. The government also charges Juarez with being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). *Id*. at 2.

## A.

On October 3, 2013, Michigan State Police Troopers Meder and Greenert stopped a black pickup truck traveling westbound on Remington Street in Saginaw, Michigan, for driving without its headlights on.[1] ECF No. 1. The vehicle is allegedly owned by David Juarez and was occupied on the night in question by Gonzalez and Coronado. ECF No. 33. As the truck came to a stop, Coronado exited the rear of the vehicle and began to flee south on foot. ECF No. 1 at 2. Coronado was "carrying a brown colored shopping bag." *Id*. Both troopers pursued Coronado to a fence along the south side of a house located on the southeast corner of Warren Street and Remington Street. *Id*. Upon reaching this fence, Coronado threw the brown paper bag over the fence and lay down on his stomach. *Id*. He was then arrested by Trooper Greenert. *Id*.

The bag Coronado threw over the fence was retrieved shortly thereafter by Trooper Meder. ECF No. 1 at 2. Trooper Meder found several pieces of plastic in the bag that "appeared to be consistent with wrappings commonly found on one kilogram packages of cocaine." *Id*. A field test for the presence of cocaine performed on the inside of one of the wrappings yielded positive results. *Id*. Trooper Meder returned to the vehicle and detained the driver, Virginia Mercedes Betancourt, and Gonzalez.[2] *Id*. at 3.

---

[1] Juarez disputes in his motion to suppress whether the headlights were actually on, giving the officers probable cause to stop the vehicle for a traffic violation. But, as will be discussed in more depth below, this fact is not relevant to the disposition of the motions.

[2] The Complaint, ECF No. 1, states only that the three subjects of the stop were detained. The Court infers from their later presence in the Saginaw County Jail that all three were arrested at the end of the stop when the complaint indicates they were detained.

**B.**

The government alleges that two cell phones were found in the vehicle during the stop on October 3, 2013. ECF No. 33 at 2. The cell phones were seized and searched pursuant to a warrant. *Id*. On the phones were numerous photographs "of Gonzalez and others holding firearms and cash, including a machine gun." *Id*. at 3. Neither side contends that Juarez or Coronado is pictured in any of the photographs.

**C.**

Later on October 3, 2013, Gonzalez placed a call from Saginaw County Jail to a number later identified as belonging to Juarez. See ECF No. 1 at 3, and ECF No. 33 at 2. This phone call was recorded. During the phone call, Gonzalez informs Juarez that he and Coronado had been stopped, "little dog" (Coronado) ran, and the police got the "stuff." ECF No. 1 at 4. Both Juarez and Gonzalez expressed concern about being connected to the contraband found during the stop. *Id*. At another point in the conversation Juarez "asked Gonzalez where the other 'stuff' was located, to which Gonzalez responded, 'they are where they are always . . . with the sandwiches.'" *Id*. The government plans to offer lay witness testimony that the voice on the other end of the line from Gonzalez belonged to Juarez. Gonzalez challenges the admissibility of this testimony.

**D.**

Defendant Juarez was arrested on October 24, 2013. Gov. Resp. at 3. The arrest occurred pursuant to a controlled drug buy. "He transported the controlled substance in a Jeep registered to his girlfriend that contained a hidden trap compartment in the passenger-side glove box." *Id*. at 3. Law enforcement officers searched the vehicle and found a "Glock pistol magazine with

- 4 -

bullets." *Id*. Officers found a Glock pistol in a secret compartment of the car Gonzalez and Coronado occupied at the time of their arrest. *Id*.

**E.**

A hearing was held on the above-mentioned motions on September 8, 2014. At the hearing it was determined that questions as to the admissibility of the photographs in question could be more fully addressed after the government had identified the photographs it intended to admit at trial. The motions argued at the hearing were taken under advisement and a supplemental briefing schedule was issued. ECF No. 75. The supplemental briefing schedule directed the government to identify the pictures they intended to admit at trial. It then ordered all defendants to object to any or all of those photographs. The government was then directed to respond to those objections. *Id*. Supplemental briefing on this issue was completed on October 6, 2014. See ECF Nos. 76, 78, 79, 80, 83, 85, & 86.

**F.**

During the supplemental briefing, Defendant Gonzalez moved to permit supplemental briefing on his motion for determination of his career offender status. ECF No. 87. Gonzalez contends in his supplemental brief that the photographs identified by the government definitively establish that the time-frame of the charged conspiracy overlaps with time-frame of a conspiracy for which he was convicted in state court. For that reason, his prior state court conviction cannot be counted toward his career offender status. ECF No. 90. The government was directed to respond. ECF No. 91. They contend that the "Defendant's prior acts of delivering and manufacturing marijuana in 2010 are not part of the conspiratorial acts associated with this case." *Id*. at 2.

**II.**

**A.**

The first motion to be considered is Gonzalez' Motion to Exclude Evidence Relating to Co-Defendant David Juarez or Alternatively for Separate Trial. ECF No. 46. Gonzalez moves to have evidence relating to Juarez' arrest excluded from the trial or, if it is not, to be severed from the trial of Juarez.[3] Because Gonzalez requests exclusion as his primary relief and in the alternative, severance, he must be requesting exclusion of the Juarez evidence at trial *in toto*. Since Gonzalez argues that a limiting instruction will be insufficient to protect him from prejudice at trial the Court will consider his severance motion first since it is the greater of the two forms of relief he requests and, if granted, would render the motion *in limine* irrelevant.[4]

Pursuant to Rule 8 of the Federal Rules of Criminal Procedure, an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . constitute parts of a common scheme or plan." FED. R. CRIM. P. 8. "For the sake of promoting efficiency and avoiding the potential for inconsistent verdicts, joint trials of defendants who are indicted together are actually encouraged rather than discouraged." *United States v. Cope*, 312 F.3d 757, 779 (6th Cir. 2002) (citing *Zafiro v. United States,* 506 U.S. 534, 537 (1993)). The benefits of a joint trial are enhanced when the defendants are charged with participating in a conspiracy. *See Cope*, 312 F.3d at 780 (citing *United States v. Weiner,* 988 F.2d 629, 634 (6th

---

[3] Juarez filed a motion joining Gonzalez's motion. In his filing, Juarez makes representations that he agrees with Gonzalez's rationale for exclusion. Juarez does not make any independent claims as to why being joined to Gonzalez would prejudice him and so why he should be severed from Gonzalez. Presumably, Juarez does not wish to join Gonzalez's request for severance from Juarez and so does not move to undertake the metaphysical question of how he can be severed from himself. Thus, Juarez's joinder motion will be read as joining only as to Gonzalez's exclusion claims.

[4] Gonzalez asks primarily for the exclusion of evidence but since it is the rare case where evidence is entirely excluded from a joint criminal trial on a motion *in limine* it is more appropriate to handle the severance issue first. Furthermore, if Gonzalez truly believes the evidence of Juarez's arrest to be irrelevant to his case, the request for exclusion would not need to be addressed if severance is warranted.

Cir.1992)). Gonzalez has been indicted jointly with Juarez and Coronado on a charge of criminal conspiracy to distribute a controlled substance, drawing him squarely within *Cope*'s rationale for promoting joinder.

Gonzalez argues that they have compelling reasons to be severed from each other. Severance of joined defendants is governed by Rule 14 of the Federal Rules of Criminal Procedure. When "a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief justice requires." FED. R. CRIM. P. 14(a). The standard for severance under Rule 14 is not mere prejudice but rather whether "there is a *serious risk* that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539 (emphasis added). Such prejudice does not erect an insurmountable bar to a joint trial; for example, the harm wrought by the prejudice of a joint trial may be cured through a trial court's limiting instructions. *See Cope*, 312 F.3d at 780 (citing *Zafiro*, 506 U.S. at 539).

Thus, for Gonzalez to succeed in his motion to sever, he must show either: (1) that joinder will prejudice or threaten a fundamental trial right, or (2) that he will suffer a heightened form of prejudice resulting in an unfair adjudication of his case by a jury. Gonzalez, in his motion to sever, makes both claims and so they will be addressed in turn.

**1.**

Gonzalez first alleges that if he is not severed from Juarez, then his right to confront the witnesses against him will be unfairly threatened. Gonzalez claims that the admission of any evidence the government possesses concerning Juarez's arrest on October 24, 2013, weeks after

the charged conspiracy ended, would endanger his Sixth Amendment Right to Confrontation. ECF No. 46, Def. Mot. Br. at 5-6.

Where a defendant's right to confront the witnesses against him will be compromised by a joint trial, severance may be proper. *See Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987). Admitting a non-testifying co-defendant's testimonial hearsay against a defendant in a joint trial violates the defendant's right of confrontation. This was the issue decided in *Bruton*. There, the Supreme Court determined that the defendants could not be fairly tried together without violating the Sixth Amendment. *See Bruton v. United States*, 391 U.S. 123, 133-34 (1968) (holding that references to the defendant in the confession had to, at a minimum, be redacted to avoid violating the Confrontation Clause). The trial court, however, could remedy a potential violation by redacting references to the defendant (the remedy discussed in *Bruton*), severing the defendants, *Richardson v. Marsh*, 481 U.S. at 209-10, or employing two different juries to hear the evidence against each defendant. *See United States v. Lemieux*, 436 F.Supp.2d 129 (D.Me. 2006) (empanelling two juries to separately try defendants in one proceeding). Gonzalez claims that he will be situated identically to *Bruton* if the evidence of Juarez's arrest is admitted and so must be severed. ECF No. 46, Def. Mot. Br. at 5-6.

Gonzalez reads *Bruton* as requiring the severance of joint criminal defendants where a limiting instruction cannot cure the prejudice of a joint trial. ECF No. 46, Def. Mot. Br. at 6,. This is incorrect. In *Bruton*, the Supreme Court focused on Bruton's right to confront the witnesses against him which could not be protected through a limiting instruction. Thus, for Bruton's remedies to be available there must be a showing that a defendant's Confrontation Clause rights would be compromised through joint trial. Gonzalez has not made this showing.

The primary concern of the Confrontation Clause is the admission of testimonial evidence that is not subject to cross examination by the criminal defendant. It is a necessary prerequisite that evidence challenged under the Confrontation Clause be testimonial because non-testimonial evidence does not engender Confrontation Clause protections. Further, testimonial statements that fit within a hearsay exclusion or exception do not violate the Confrontation Clause and thus do not raise a *Bruton* issue. *See Bourjaily v. United States*, 483 U.S. 171, 183 (1987). In *United States v. Cromer*, the Sixth Circuit set forward what has become the prevailing test in the circuit for determining testimoniality: "The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." 389 F.3d 662, 675 (6th Cir. 2004). What is decidedly not testimonial evidence, however, is evidence of other crimes, wrongs, or acts of a co-defendant. No court has held such evidence to be testimonial hearsay implicating the Confrontation Clause and Gonzalez has not given this Court reason to be the first.

**2.**

Gonzalez also claims that he would suffer undue prejudice during a joint trial if the evidence of Juarez's October 24, 2013 arrest, which is not charged as part of the current conspiracy, were to be introduced at trial against Juarez. Gonzalez believes and alleges that this evidence will be introduced under Federal Rule of Evidence 404(b).[5] The Sixth Circuit has termed such an effect as "spillover." *United States v. Moore*, 917 F.2d 215, 221 (6th Cir. 1990).

---

[5] The government admitted during the hearing that if it were to attempt to enter any evidence of Juarez's October 24, 2013 arrest it would do so under Rule 404(b). It stated, however, that it has yet to serve a 404(b) notice and would serve one once it decided on whether to use that evidence at trial or not.

Spillover is where a jury will not be able to properly compartmentalize evidence against each individual defendant. *See United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987). But to show such unfairness Gonzalez would need to show that a joint trial would produce "specific and compelling prejudice." *United States v. Gallo*, 763 F.2d 1504, 1526 (6th Cir. 1985). "Merely because inflammatory evidence is admitted against one defendant, not directly involving another codefendant (and with which the other is not charged) does not, in and of itself, show substantial prejudice in the latter's trial." *Gallo*, 763 F.2d, 1526; *see also United States v. Reeves*, 674 F.2d 739 (8th Cir. 1982), *United States v. Losada*, 674 F.2d 167 (2d Cir. 1982). Limiting instructions exist to cure this exact sort of prejudice. Gonzalez disputes their efficacy here.

The possible use of the evidence of Juarez's October 24, 2013 arrest against Juarez at trial under Rule 404(b) would not "prevent the jury from making a reliable judgment about [Gonzalez's] guilt or innocence." *Zafiro*, 506 U.S. at 539. Defendant need not be severed simply because the evidence of Juarez's arrest may not be allowed into evidence against him.[6] Assuming juries are reasonable, as we must, the compartmentalization to a single defendant of evidence pertaining to that same defendant's arrest rests entirely within their competence. If a risk of confusion exists, limiting instructions can be employed to remedy any resulting problems. *See Cope*, 312 F.3d at 780 (citing *Zafiro*, 506 U.S. at 539). Yet nothing here indicates that there would even be confusion following the introduction of this evidence. Nevertheless, Gonzalez argues in his brief that some confusion, short of that necessary for severance, will result from the evidence, thus requiring remedial action of a sort by this Court. As such, we will now turn our attention to Gonzalez's exclusion claims. ECF No. 46, Def. Mot. Br. at 5.

---

[6] Gonzalez makes no claim to the inadmissibility of the photographs as to Juarez.

**B.**

Gonzalez and Juarez both move this Court to exclude evidence relating to Juarez's arrest. Both ground their claims in a relevance objection, contesting the relevance of Juarez's October 24, 2013 arrest to their trial on the conspiracy count, which charges the conspiracy as having ended on or about October 6, 2013. ECF No. 46, Def. Mot.; ECF No. 54, Def. Mot. Juarez, additionally, disputes the admissibility of the evidence under Federal Rule of Evidence 404(b), presumably the government's means of introduction at trial.[7] ECF No. 54, Def. Mot. at 2. Both motions are presented in the form of motions to exclude, however they are more properly considered as motions *in limine*. Absent a violation of the Fourth, Fifth, or Sixth Amendments a defendant will not be entitled to suppression or exclusion of evidence. On the contrary, evidence which, for one reason or another, runs afoul of the Federal Rules of Evidence will not be admitted.

The differences between evidence being excluded on the one hand as opposed to being considered inadmissible on the other are subtle but important. If evidence is suppressed, a court eliminates its use altogether. Inadmissible evidence, however, affects only the fact-finders ability to consider that evidence when reaching their findings. Inadmissible evidence may still be presented in some situations, for instance, and most important for our purposes, where it is relevant to the case against a co-defendant but not a defendant. Any risk of use against the defendant would be guarded against by a limiting instruction.[8] Gonzalez and Juarez, because they lack any facially meritorious claim for suppression, will be treated as having requested a preliminary evidentiary determination.

---

[7] The government, confronted with a number of motions and joinder motions, has failed to directly respond to the contentions Juarez adopts in his joinder motion.

[8] Motions *in limine* can lead to wholesale exclusion which, though rare, will be discussed below.

**1.**

Gonzalez makes solely a relevance claim for exclusion. He argues that the Court should bar the admission of evidence relating to Juarez's arrest as irrelevant under Rule 403. There are three possible outcomes to this claim. First, the evidence may be admissible against Juarez and Gonzalez, most likely as evidence of the alleged conspiracy. Second, the evidence may be admissible against Juarez and not Gonzalez, requiring a limiting instruction to that effect. Third, the evidence may be admissible against Juarez and in turn be so prejudicial against Gonzalez that something more than a limiting instruction is necessary to cure that prejudice.[9] Based on Gonzalez's motion, it appears he claims the facts dictate that the third scenario must obtain. ECF No. 46, Def. Mot. at ¶7. For the reasons here stated, they do not.

The first two possible outcomes of the admission of the Juarez evidence at trial will not be entertained here, better suited as they are for a motion in *limine*. It suffices to say, however, that either of those outcomes would not prejudice Gonzalez to such a degree that he should be severed from Juarez or have those statements excluded altogether. If the latter of those two situations were to present itself upon the admission of the Juarez evidence, Gonzalez would be well within his rights at trial to move this Court for a limiting instruction advising the jury that the evidence pertains only to Juarez. The government admits that a limiting instruction may be appropriate to prevent juror confusion.

Where evidence of a similar act "does not include or implicate another co-defendant's involvement, a cautionary limiting instruction will usually be ample to guard against unfair prejudice." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 174 (S.D.N.Y. 2006), see also *United States v. Rosenwasser*, 550 F.2d 806, 808 (2d Cir. 1977) ("In those circumstances, there

---

[9] Of course, in the matrix of possible outcomes there is a fourth option: that the evidence is not admissible against either Gonzalez or Juarez. If this be the case, Gonzalez need not worry and so this scenario is not addressed.

is little doubt that a cautionary instruction is sufficient to preserve the co-defendant's right to a fair trial.") Assuming, *arguendo*, that the government does not argue that the circumstances surrounding Juarez's arrest on October 24, 2013 formed a part of the conspiracy charged, the evidence as presented in the parties' papers does not appear to "include or implicate" Gonzalez. Indeed, Gonzalez was in jail at the time of Juarez's arrest and had been so for eighteen days. A reasonable jury would not struggle with apportioning the appropriate evidence to each defendant.

But, as noted above, Gonzalez alleges something more. He asserts that he will be subject to unfair prejudice by the introduction of the Juarez evidence. ECF No. 46, Def. Mot. Br. at 5. The prejudice will be so unfair, in fact, that the evidence should not be let within the four walls of the courtroom. Where two or more defendants are tried together the Rule 403 admissibility balancing test takes on additional facets. First, the Court must conduct the Rule 403 balancing with respect to the defendant against whom the evidence is being admitted. The evidence is then either deemed admissible or inadmissible. If inadmissible, the inquiry ends. If admissible, the Court must undertake another Rule 403 balancing test with respect to the co-defendant. *See United States v. Figueroa*, 618 F.2d 934, 945 (2d Cir. 1980) ("The trial judge must weigh not only the probative value and the risk of unfair prejudice to the defendant against whom the evidence is offered, but also the appropriateness of permitting the prosecution to introduce the evidence in a joint trial."). "In some situations the danger of unfair prejudice to co-defendants may be so great that the prosecution must be put to a choice of forgoing either the evidence or the joint trial." *Id*.

The situations that have been found unfair enough to force such an election by the government are limited. Where, as here, other crimes, wrongs, or acts are concerned the Court must weigh "the likely effectiveness of the cautionary instruction that tries to eliminate the

prejudice to the co-defendant by limiting the jury's consideration of the evidence to the defendant against whom it is offered." *Id*. at 946. "[S]imilar acts of misconduct performed by one person cannot be used to infer guilty intent of another person who is not shown to be in any way involved in the prior misconduct, unless it be under a 'birds of a feather' theory of justice. Guilt, however, cannot be inferred merely by association." *United States v. DeCicco,* 435 F.2d 478, 483 (2d Cir.1970). But for Gonzalez to avail himself of this rule he must show that the introduction of the Juarez evidence would unfairly implicate him as being involved in that transaction. He has offered no evidence that such would be the case.

The government indicated at the hearing on the motions that they will not introduce the evidence about Juarez without first filing a Federal Rule of Evidence 404 notice or possibly even amending the indictment. Even if they were to introduce that evidence, the government concedes that a limiting instruction may be appropriate regarding the possible application of the Juarez evidence to Gonzalez. ECF No. 58, Gov. Resp. at 3. The fact that the government charged Juarez for violating the laws governing the possession of firearms by felons presents a separate count toward which the Juarez evidence will be used. ECF No. 22 at 2-3. Relatively neatly segregated charges will aid the jury in keeping the Juarez evidence properly apportioned. Gonzalez does not run a risk of unfair prejudice that would necessitate such a weighty remedy as forcing the government to choose between a joint trial and complete exclusion of the evidence. Gonzalez's motion for exclusion of the Juarez evidence will be denied.

**2.**

Juarez joins in Gonzalez's motion for exclusion of the evidence of his arrest on October 24, 2013. ECF No. 54, Def. Mot. Like Gonzalez, Juarez bases this claim in Federal Rules of Evidence 403 and 404(b). *Id*. at 2. In opposition, "the government believes that this evidence is

relevant to the current indictment."[10] ECF No. 58, Gov. Resp. at 3. Because of the confusion

regarding what evidence will be presented when, with respect to what charges, and when in the

course of events certain evidence came to light, extensive quoting from the parties' submissions

is helpful. Specifically, Juarez claims that

> . . . evidence related to his arrest on or about October 24, 2013 is unrelated to the
> alleged events underlying the charges in the Indictment, and are inadmissible at
> trial. Additionally, the Defendant asserts that evidence of his October 24th arrest
> is not admissible pursuant to FRE 404(b) because it does not fall within any of the
> listed appropriate purposes and the government has not provided notice of its
> intent to offer the same.

ECF No. 54, Def. Mot. at 1-2. In discussing the same evidence the government asserts that:

> On October 24, 2013, law enforcement officers discovered that D-3 Juarez
> transported cocaine for redistribution to a residence. He transported the controlled
> substance in a Jeep registered to his girlfriend that contained a hidden trap
> compartment in the passenger-side glove box. Inside the hidden trap
> compartment, law enforcement officers located a Glock pistol magazine with
> bullets. One of the firearms D-3 Juarez is charged with in this case is a Glock
> pistol that was found in a trap compartment of the vehicle occupied by Gonzalez
> and Coronado.

ECF No. 58, Gov. Resp. at 3.

Looking to the complaint and indictment helps resolve some of the vagueness of the

evidentiary claims made by both sides. First, nothing indicates that the evidence supporting the

charges in the indictment stems from the October 24, 2013 arrest of Juarez. In fact, the contrary

is true. Juarez is charged with Conspiracy to Distribute Cocaine under 21 U.S.C. §§ 846 and

841(a)(1) and being a Felon in Possession of a Firearm under 19 U.S.C. § 922(g)(1). ECF No.

22. The indictment charges the Conspiracy to Distribute Cocaine as ending "on or about October

---

[10] As already discussed, the government does not write directly in response to Juarez. The nature of their response to Gonzalez, however, allows insight into their proofs against Juarez and the manner in which the evidence will be used at trial against him. Their belief in the relevance of this evidence is discussed in their response to Gonzalez's motion to sever or suppress where they note that they would be amenable to a limiting instruction at trial that limits the evidence's applicability to Gonzalez but still allows them use of the evidence against Juarez. ECF No. 58.

6, 2013." *Id*. It also charges Juarez as being a felon in possession of two firearms: "one Taurus .357 revolver; and one Glock, model 38 .45 caliber semi-automatic pistol." *Id*. The complaint alleges that both of these firearms were found in a hidden compartment in the vehicle that Gonzalez and Coronado were occupying on October 3, 2013 and that belongs to Juarez. ECF No. 1 at ¶12. The government does not allege that Juarez regained possession of the vehicle prior to October 24, 2013 or that he was in possession of either firearm on that date. The government's claim regarding the admissibility of the evidence from October 24, 2013 appears without basis in the record. Thus, to the extent the government cannot show a connection between the Juarez evidence and the charges in the indictment, Defendant Juarez's motion will be granted. To the extent that the government can show a connection, such as in proving Juarez's ownership of the Glock pistol—if ownership is contested, the evidence will be admitted for that purpose. As noted above, however, the government has indicated that most of the evidence from the October 24, 2013 arrest will not be introduced without first filing a Rule 404 notice or unless the indictment is amended.

## C.

Gonzalez next files a motion *in limine* to Exclude Proposed Voice Identification Evidence. He asks the Court to deem inadmissible evidence to be offered that the individual Gonzalez called from jail on October 3, 2013 was Defendant Juarez. ECF No. 48, Def. Mot. He claims that Agent McGovern will be offered both as a lay witness to identify Juarez's voice pursuant to Federal Rule of Evidence 901 and an expert witness to testify as to elements of cocaine distribution. *Id*. at 5-6. The government responds that Agent McGovern is not the lead investigator on this case and will not be offered as an expert in cocaine distribution. The government confirms that they will offer Agent McGovern as a Rule 901(b)(5) witness for

purposes of voice identification. ECF No. 57, Gov. Resp. at 3. Further, at the hearing, the government indicated that it would bring forward a different witness to serve as an expert in cocaine distribution.

In light of the government's posture, the only question before the Court is the propriety of Agent McGovern's testimony. Gonzalez alleges that the government will engage in improper "bolstering" of McGovern's credibility at trial. *See United States v. Francis*, 170 F.3d 546 (6th Cir. 1999). He contends that McGovern will testify to having gained knowledge of Juarez's voice from certain contacts into which Gonzalez's counsel cannot inquire:

> Defense Counsel for Gonzalez can not [sic] cross-examine Agent McGOVERN concerning these contacts without getting into the evidence of the independent investigation of JUAREZ. These contacts are not part of the record in this case and would not allow for corroboration by the jury of facts upon which McGOVERN forms his opinion. ECF No. 48, Def. Mot. at 5.

Gonzalez cites to *Francis* to support his claim. It is not clear to the Court, however, why Agent McGovern could not be cross-examined as to his knowledge of Juarez's voice. In fact, there does not appear to be a more fertile ground for cross-examination. The government agreed at the hearing that the defendants would be free to cross-examine Agent McGovern with respect to all of his contacts. The government also stated that they have no intention of getting into the substance or history of Agent McGovern's investigation of Juarez or his experience with drug operations, the exact evidence Gonzalez feared would come out at trial. Thus, absent any proof of these alleged "contacts" that are outside the record and to which the jury will not be privy, the requested relief would be premature and, likely, inappropriate.[11]

---

[11] The government asserts in their brief that "Agent McGovern heard D-3 Juarez's voice both firsthand and through electronic transmissions and recordings." ECF No. 57, Gov. Resp. at 3. If the government is taken at their word concerning the presentation of their proofs, Defendant will be perfectly able to cross examine Agent McGovern as to his personal knowledge of the matter.

If the government presents Agent McGovern as both a lay and expert witness at trial, Gonzalez is free to renew his objections and request an appropriate limiting instruction, *see United States v. Lopez-Medina*, 461 F.3d 724, 743-744 (6th Cir. 2006), or greater relief he believes warranted and authorized by law. Furthermore, if Gonzalez believes impermissible bolstering to be occurring at trial during the testimony of Agent McGovern, he is likewise free to renew his objection on that ground. At present, however, the exclusion of Agent McGovern's testimony for that reason would be premature and unnecessary based on the government's representations. Lastly, Gonzalez is welcome to inquire into or object to the basis for Agent McGovern's knowledge of Juarez's voice during testimony at trial, the proper time and place for the resolution of such issues.

**D.**

Next, Gonzalez seeks the exclusion of photographs taken from cellphones found during the October 3, 2013 arrest of Gonzalez and Coronado. He argues that the photographs are not relevant evidence under Federal Rule of Evidence 401 and must be excluded. ECF No. 45, Def. Mot. at 5. To that end he claims that "the undated photographs depicting unidentified individuals and depictions displaying what [it] is expected the government will argue include cash, firearms, and evidence of 'gang' activity display conduct which is dissimilar to the conduct alleged against Defendant in this cause and would be inadmissible against Defendant in this cause." *Id*. at ¶10. The government responds that the photographs are not only relevant but highly probative of Gonzalez's guilt and form an important part of their proofs. ECF No. 56, Gov. Resp. They allege that Gonzalez himself appears in many of the photographs and the other subject matter is highly pertinent to the charged offenses. *Id*. at 3-6. Juarez has joined in this motion. ECF No. 53.

Following the supplemental briefing ordered by the Court, the government identified the specific photographs it intended to produce at trial. ECF No. 76. The government identified twenty-three (23) photographs which are numbered as follows: 10203, 10205, 10233, 10234, 10235, 10237, 10238, 10239, 10255, 10263, 10281, 10300, 10310, 10316, 10329, 10332, 10347, 10349, 10358, 10485, 10554, 10718, and 10486. *Id.*

## 1.

Gonzalez's claims regarding the admissibility of the photographs in question were clarified during the supplemental briefing ordered by the Court. ECF No. 79. Gonzalez makes two claims regarding the photographs' admissibility. First, he contends that there are issues surrounding the credibility of the photographs that may prevent them from being admissible at trial. ECF No. 79 at 3. He claims "that the Government has the burden to establish when the photographs were taken and what, if any, association Defendant has with the photographs to begin to reach the threshold of relevance and admissibility concerning the specific charge against Defendant GONZALEZ." *Id.* Gonzalez requests an evidentiary hearing to resolve these foundational issues.

Second, Gonzalez renewed his original claims that the photographs offered are of dubious relevance to the crimes charged and, to the extent they are relevant, are far more prejudicial than probative and must be excluded. *Id.* at 4-8. While Gonzalez catalogs his objections with respect to each photograph, the core of his objections is that the items, paraphernalia, or subject-matter depicted in the photographs would unduly prejudice him. *Id.*

### i.

Gonzalez's first objection, that the photographs lack proper foundation for admission at trial will be dismissed without prejudice to his ability to raise this objection at trial. Currently,

there is no indication that the origin of the photographs are in serious dispute. The government alleges that they "will be able to lay a proper foundation for admission of photographs located on Gonzalez's cellular telephones." ECF No. 83 at 3. Gonzalez does not contest that the photographs were located on his phone but rather argues that

> [t]he information provided by the Government concerning the photographs does not provide when the pictures were taken, how they were created on this particular telephone, whether they were deleted and then recovered through forensic examination and whether the telephone was owned or possessed by someone else associated with the pictures? [sic]

ECF No. 79 at 3. These issues go to the weight of the evidence at issue, not its admissibility. Gonzalez's claims regarding the true ownership of the phone are also unavailing since he does not dispute his possession of the phone at the time of arrest. Gonzalez is free to seek answers to the questions he poses on cross examination or otherwise object to the foundation laid by the government for the photographs at trial.

**ii.**

In light of the foregoing, Gonzalez's remaining ground for exclusion is the alleged prejudicial subject matter of the photographs. A court may exclude evidence under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." FED. R. EVID. 403. "The admission of photographs is a matter within the sound discretion of the trial court" and adheres to the same balancing test. *Giblin v. United States*, 523 F.2d 42, 44 (8th Cir. 1975). The admission of gang evidence "raises the specter of guilt by association" but "the risk of prejudice associated with gang evidence does not render it automatically inadmissible." *United States v. Santiago*, 643 F.3d 1007, 1011 (7th Cir. 2011). The traditional Rule 403 balancing test still applies and gang evidence that is more probative than prejudicial is admissible. *Id*. The Sixth Circuit "has held many times that guns are 'tools of the trade' in drug transactions." *United States v. Hardin*, 248 F.3d 489, 499 (6th Cir. 2001). The

possession of large amounts of cash is similarly relevant to drug prosecutions. *See United States v. Mohammad*, 501 F. App'x 431, 443 (6th Cir. 2012).

Here, Gonzalez has not shown how the photographs of money, guns, and other "tools of the trade" such as certain pictures of tattoos are prejudicial. He also does not provide the Court with any authority contradicting the authority that these items are relevant in a drug prosecution. *See Giblin*, 523 F.2d at 44; *Hardin*, 248 F.3d at 499. The photographs the government proposes to enter into evidence show Gonzalez with firearms and large amounts of cash. The presentation of this evidence will aid the government in their proofs and is entirely relevant to that end. *See United States v. Capps*, 48 F.3d 1220, *5 (6th Cir. 1995) (upholding admission of weapons and cash as evidence relevant to proof of a drug conspiracy).

Evidence of tattoos on a defendant may be prejudicial in some cases and Gonzalez claims here that pictures of his tattoos will be used "for the prohibited purpose of seeking to characterize Defendant as a criminal and drug dealer." ECF No. 79 at 6. Such a use may be prejudicial if the tattoos are used to prove mere guilt by association. *See, e.g.*, *United States v. Ruibal*, No. 12-cr-132, 2014 WL 198663, at *2 (W.D. Mich. Jan. 16, 2014); *Santiago*, 643 F.3d at 1011. But using photographs of tattoos to prove gang affiliation and participation in a conspiracy is a permissible, probative use. *See Ruibal*, 2014 WL 198663, at *2 (collecting cases that approve of such use). The government indicates that it intends to use the photographs of Gonzalez's tattoos for this purpose. If the government's use goes beyond that purpose, Gonzalez may object and seek a limiting instruction. The government has conceded that a limiting instruction may be appropriate to head off any improper inferences by the jury. ECF No. 83 at 7. As things stand, nothing requires their exclusion.[12]

---

[12] Gonzalez makes a supplemental claim that the pictures also depict acts related to his prior state court convictions. He does not indicate how this fact must result in the exclusion of the photographs. Indeed, the principal

**2.**

Juarez joins in Gonzalez's motion to exclude the photographs. Like Gonzalez, Juarez's most compelling rationale for exclusion is the irrelevance of the photographs to the charges against him in the indictment. ECF No. 53. First, Juarez claims that any photographs admitted against Gonzalez cannot be fairly admitted against him. *Id*.; ECF No. 78. If they are admitted against Gonzalez a curative instruction would be insufficient, so he would need to be severed or the photographs would need to be excluded in their entirety. Second, he claims that while the two photographs that depict him may be appropriately used to show his relation to Gonzalez, this use is unnecessary because that relationship is uncontested. *Id*. Admitting these two photographs, Juarez claims, would be overly prejudicial.

**i.**

For the reasons stated above, the photographs are indeed relevant to the indictment. See *supra* § II.D.1. Furthermore, any claim that Juarez possesses individually as to their exclusion with respect to him alone would be without merit. The photographs would be at least provisionally admissible against Juarez if they are admissible against Gonzalez. Because the indictment charges the Defendants with conspiracy, any evidence of acts in furtherance of the conspiracy is relevant evidence and admissible against all co-conspirators. *See Capps*, 48 F.3d 1220 at *5. Thus, Juarez's claim that the admission of the photographs against Gonzalez is far more prejudicial than probative and cannot be cured with a limiting instruction misstates the law on conspiracy evidence. Similarly, the government's suggestion that a limiting instruction may

---

of dual sovereignty permits the prosecution by separate sovereigns of identical offenses, let alone offenses that may share some overlapping conduct where said conduct may be admitted at trial. *See, e.g.*, *Heath v. Alabama*, 474 U.S. 82 (1985). The fact that his prior state court convictions may have involved some conduct that is now allegedly involved in this federal prosecution is unavailing as a ground for excluding evidence. His claim that the depiction in the photographs of conduct related to his prior state court convictions should preclude the determination that he is a career offender will be addressed below. *See infra* § II.G.

be appropriate is moot if the threshold proofs for establishing a conspiracy are met. The photographs do not merit exclusion from proofs against Juarez.

**ii.**

Juarez addresses more specific arguments for exclusion to the two photographs in which he is depicted. He argues that using these two photographs to show his relationship to Gonzalez is redundant, unnecessary, and would result in unfair prejudice. But the government responds that the two photographs will be used for more than simply showing he is related to Gonzalez, they will also be used to "demonstrate knowledge of the conspiracy." ECF No. 85 at 4. While Juarez's claim that the jailhouse phone call from Juarez to Gonzalez serves the same purpose as the photographs would apply equally to this use, he does not give any evidence that requires the government to limit their proofs to only one piece of evidence. While overly cumulative evidence may be prejudicial, that point is not reached by adding the photographic evidence to the phone call evidence. The two photographs depicting Juarez will not be excluded.

**E.**

Juarez independently moves to suppress evidence obtained pursuant to the vehicle stop on October 3, 2013. He claims that the law enforcement officers that executed the stop lacked probable cause to make the stop, in violation of the Fourth Amendment. ECF No. 50, Def. Mot. at ¶13. The police similarly lacked probable cause to search his vehicle. *Id*., Def. Mot. Br. at 5. All evidence obtained by the police following this unlawful search and seizure must then be suppressed as 'fruit of the poisonous tree.' *Id*., Def. Mot. at ¶15. The government contests Juarez's standing to challenge the stop itself. ECF No. 73, Gov. Resp. at 1-4. In the alternative, the government asserts that Coronado's arrest and the evidence it produced do not fall from the

tree of the stop, if it were to be found poisonous. *Id*. at 4-5. They lastly claim that the stop was valid and made pursuant to probable cause. *Id*. at 5.

First, Juarez does not have standing to challenge the validity of the stop. Vehicle owners absent at the time their vehicle is stopped cannot challenge the stop. *See United States v. Powell*, 929 F.2d 1190, 1194-95 (7th Cir. 1991); *United States v. Elmore*, 304 F.3d 557, 561 (6th Cir. 2002). A mere proprietary interest in the vehicle does not suffice for Fourth Amendment standing to challenge a traffic stop. *See Elmore*, 304 F.3d at 561 (finding the district court erred in holding the defendant had a legitimate expectation of privacy based merely ownership of the stopped vehicle). Neither party contests the fact that Juarez was not present at the stop. Because he was not present, he lacks standing to challenge the stop.[13] To the extent Juarez challenges the stop as not based on probable cause, he does not succeed.

Juarez also contests the validity of the search of the vehicle. ECF No. 50, Def. Mot. Br. at 5. Here, Juarez faces fewer problems. The government denies that Juarez challenges the validity of his vehicle's search, claiming he only challenges the stop. Juarez's papers are clear, however. He makes the assertion, albeit without merit, "that no warrant is involved in the search of his vehicle and denies that any exception is applicable to the circumstances." *Id*. at 5. His challenge to the search is plain. Further, he cites to *United States v. Jenkins*, 92 F.3d 430 (6th Cir. 1996), a case concerning the standing of an absentee vehicle owner to challenge the search of his vehicle.

No bright line rule exists regarding the standing of a vehicle owner to challenge the search of his vehicle. *See Jenkins*, 92 F.3d 430 (explaining that such a determination is fact-specific as to whether the owner had a subjective expectation of privacy and if that expectation

---

[13] Juarez's claim that the stop was unlawful focuses on a dispute between the parties as to whether the car's headlights were on or off on the night in question. While this question may be dispositive as to whether the police had probable cause to stop the vehicle, we cannot now consider it since Juarez does not have standing to press this claim.

was reasonable). Determining whether an absentee owner may challenge the search of his vehicle requires the Court to evaluate whether the owner had a reasonable expectation of privacy in the area searched. *See California v. Ciraolo*, 476 U.S. 207, 210 (1986) (setting forth the test for whether someone may claim Fourth Amendment protections in an area). Juarez must show that he had a legitimate expectation of privacy in the contents of his vehicle for the search and its fruits to be suppressed. Juarez asks for the suppression of the evidence retrieved during the arrest of Coronado as fruits of illegal police activity. ECF No. 50, Def. Mot. Br. at 6. Though not claimed in his papers, an illegal search of the vehicle could also render any items taken from within the vehicle suppressible, notably the firearms found in the vehicle's hidden compartment.

Juarez ties his claim for the suppression of the evidence taken from Coronado's arrest to the illegality of the stop, not the search. Since he cannot challenge the validity of the stop, any purported fruits likewise cannot be challenged. Juarez's only claim for suppression of Coronado's arrest would have to be that that evidence would not have been obtained but for the illegal search of the vehicle. Because Coronado was detained and the evidence he was transporting was retrieved prior to the vehicle's search, ECF No. 1 at ¶10, this argument is meritless.

Assuming the search was invalid and that it was the reason for Coronado's flight, Juarez still would not succeed. Vehicle owners do not have a legitimate expectation of privacy in the interior of their vehicle. *See United States v. Weatherspoon*, 82 F.3d 697, 699 (6th Cir. 1996) (holding that because a vehicle's interior space is easily viewed from the outside an owner does not have a legitimate expectation of privacy in that space). So if Coronado's flight could be shown to be the fruit of the search, the search was not poisonous.[14] Juarez presses no other

---

[14] Here it should be noted that Juarez appears to make another claim in the alternative that the search was invalid because it was conducted without a warrant: "The Defendant notes that no warrant is involved in the search

Fourth Amendment claims to suppress other evidence, such as the guns found in his vehicle. As such, his suppression motion will be denied.

## F.

Juarez also moves this Court to Exclude Evidence of Statements by Co-Defendants. ECF No. 51, Def. Mot. Juarez challenges the potential admission of Gonzalez's statement to police that the truck Gonzalez was driving belonged to Juarez. *Id*. Gonzalez gave this statement after being arrested and while being interviewed by the police. *Id*. at ¶3. The government "agrees that the testimonial statement would facially implicate Juarez. Accordingly, the government agrees not to introduce the statement." ECF No. 72. In view of this concession, Defendant's Motion to Exclude Evidence of Statements by Co-Defendants will be granted to the extent the statements are introduced against Juarez.

## G.

Gonzalez's final motion seeks a pre-trial determination of his status as a career offender. ECF No. 47, Def. Mot. He asks the Court to make this determination in order to aid in plea negotiations. *Id*., Def. Mot. Br. at 4. Gonzalez claims that, if convicted, he would not qualify for career offender status because his prior two convictions were "imposed on the same date" and the "sentences ran concurrently." *Id*., Def. Mot. at ¶3. For authority he points to U.S. Sentencing Guidelines Manual § 4A1.2(a)(2) (2013). The government asserts that Gonzalez would, if convicted, be a career offender as defined by § 4B1.2(c) of the Guidelines.

---

of his vehicle and denies that any exception to the warrant requirement is applicable to the circumstances." ECF No. 50, Def. Mot. Br. at 5. This misstates the law. One of the oldest and surest exceptions to the warrant requirement is the automobile exception. *See Carroll v. United States*, 267 U.S. 132 (1925). As long as probable cause exists that contraband may be present in the car, the police need not obtain a warrant prior to searching the vehicle. *Id*. The search of Juarez's vehicle followed the arrest of Gonzalez and Coronado as well as the discovery of drug paraphernalia on Coronado's person. The police had probable cause to believe contraband could be found in the vehicle and so did not need a warrant to execute a search.

Following supplemental briefing on the admissibility of photographic evidence, Gonzalez moved for permission to submit a supplemental brief on his motion for determination of career offender status. ECF No. 87. In his supplemental brief Gonzalez argues that "the Government must acknowledge that this evidence includes photographs taken in connection with the activities of Defendant in regard to the charges for which he was convicted in State Court." ECF No. 90 at 4. As a result, Gonzalez claims, "[t]his evidence . . . means that these prior sentences are excluded by Section 4A1.2(a)(1) [of the Sentencing Guidelines] since those sentences previously imposed upon an adjudication of guilt include conduct which **is** part of the instant offense." *Id*. (emphasis in original).

The question of career offender status is relevant to sentencing, but not to the determination of whether he is guilty of the charged offenses.  Sentencing, of course, will not take place unless defendant pleads guilty and waives his right to a jury trial, or is convicted of one or more of the charges following trial.  Nevertheless, because the determination of whether Defendant qualifies as a career offender would have a significant impact on his ultimate sentence if he were to be convicted or plead guilty, and because the state of the law leaves him without clear guidance, the Court will take up the motion.  The Court will undertake the analysis with the understanding that Defendant retains his presumption of innocence and he has not waived any right to which he is entitled.

Section 4B1.1 of the Sentencing Guidelines controls what individuals are classified as a "Career Offender." Subsection (a) reads:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(c) (2013). Since the motion is antecedent to trial, the Court's focus is on prong three of the career offender determination. Section 4B1.2(c) defines "two prior felony convictions":

> The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

*Id*. at § 4B1.2(c). Thus, if Gonzalez's prior convictions are counted separately under § 4A1.1(a), (b), or (c) he qualifies for career offender status upon guilty plea or conviction in the instant case.

Section 4A1.1 in turn points to § 4A1.2(a) for determining what counts as a prior sentence. Section 4A1.2(a)(2) states that "prior sentences are always counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." *Id*. at § 4A1.2(a). Gonzalez finds himself in precisely that situation. Both parties agree that Gonzalez's two state court convictions, despite running concurrently, were preceded by two separate arrests. ECF No. 47, Def. Mot. at ¶4; ECF No. 55, Gov. Resp. at 2. One of those arrests occurred while he was released on bond following the arrest for the first conviction. *Id*.

Gonzalez contends that the latter arrest which resulted in a conviction does not qualify as a "sentence of imprisonment" under § 4A1.2(a)(2). Section 4B1.1, at issue here, does not rely on whether a prior sentence qualifies as a sentence of imprisonment. Indeed, the guidelines nowhere incorporate the requirement that a sentence be a "sentence of imprisonment" into the career offender determination. Rather, "prior felony conviction" under § 4B1.2 "means a prior adult

federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, *regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed*." U.S. Sᴇɴᴛᴇɴᴄɪɴɢ Gᴜɪᴅᴇʟɪɴᴇꜱ Mᴀɴᴜᴀʟ § 4B1.2 Application Notes 1 (emphasis added). Both state offenses carried potential sentences of more than one year imprisonment.

Gonzalez's second point of contention, raised in his supplemental brief, is that under § 4A1.2(a)(1) his current charge and his prior state convictions share elements of conduct that disqualify him from career offender status under that section. Section 4A1.2(a)(1) reads "[t]he term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of <u>nolo contendere</u>, for conduct not part of the instant offense." Gonzalez believes that his prior sentences in state court involved conduct that now forms part of this offense.

Section 4A1.2's commentary relates back to § 1B1.3 for the definition of what conduct is relevant under the subsection. Section 1B1.3, in its commentary, instructs as to how such conduct is to be considered:

> 8. For the purposes of subsection (a)(2), offense conduct associated with a sentence that was imposed prior to the acts or omissions constituting the instant federal offense (the offense of conviction) is not considered as part of the same course of conduct or common scheme or plan as the offense of conviction.

U.S. Sᴇɴᴛᴇɴᴄɪɴɢ Gᴜɪᴅᴇʟɪɴᴇꜱ Mᴀɴᴜᴀʟ § 1B1.3 commentary ¶8.[15] This note is followed by an illustrative example that clarifies what conduct is considered part of the same course of conduct in determining career offender status under § 4A1.2(a)(1):

---

[15] The comment makes reference to subsection (a)(2) of the section and that subsection specifically refers "solely . . . to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts[.]" Furthermore, subsection (b) states that "Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines." Based on the reference to § 1B1.3 found in Chapter Four, it would appear that these cross-references create an endless referential loop. It would also appear that (a)(2), on its face, is not applicable to career status under Chapter Four. But this was

> Examples: (1) The defendant was convicted for the sale of cocaine and sentenced to state prison. Immediately upon release from prison, he again sold cocaine to the same person, using the same accomplices and modus operandi. The instant federal offense (the offense of conviction) charges this latter sale. In this example, the offense conduct relevant to the state prison sentence is considered as prior criminal history, not as part of the same course of conduct or common scheme or plan as the offense of conviction. The prior state prison sentence is counted under Chapter Four (Criminal History and Criminal Livelihood). (2) The defendant engaged in two cocaine sales constituting part of the same course of conduct or common scheme or plan. Subsequently, he is arrested by state authorities for the first sale and by federal authorities for the second sale. He is convicted in state court for the first sale and sentenced to imprisonment; he is then convicted in federal court for the second sale. In this case, the cocaine sales are not separated by an intervening sentence. Therefore, under subsection (a)(2), the cocaine sale associated with the state conviction is considered as relevant conduct to the instant federal offense. The state prison sentence for that sale is not counted as a prior sentence; see § 4A1.2(a)(1).

*Id*. Gonzalez, based on the evidence alleged regarding his prior convictions and the governments proposed proofs, falls into example (1). For the purposes of calculation, then, the conduct introduced against Gonzalez that he alleges relates to his prior state convictions would be "considered as prior criminal history, not as part of the same course of conduct or common scheme or plan as the offense of conviction." *Id*. For that reason, and the reasons stated above, should Gonzalez be convicted, he will qualify as a career offender.

### III.

Accordingly, it is **ORDERED** that Gonzalez's Motion to Exclude Evidence or Alternatively for Separate Trial (ECF No. 46) is **DENIED.**

It is further **ORDERED** that Juarez's Joinder in Gonzalez's Motion to Exclude Evidence or Alternatively for Separate Trial (ECF No. 54) is **DENIED** without prejudice.

---

evidently not contemplated by the Sentencing Commission since the example, cited below, attached to subsection (a)(2), makes explicit reference to the career offender guidelines in Chapter Four that are at issue here. Thus, the commentary and example are instructive to Gonzalez's career determination, despite the circularity of the Guidelines.

It is further **ORDERED** that Gonzalez's Motion to Exclude Proposed Voice Identification Evidence (ECF No. 48) is **DENIED**.

It is further **ORDERED** that Gonzalez's Motion to Exclude Admission of Photographs (ECF No. 45) is **DENIED**.

It is further **ORDERED** that Juarez's Joinder in Gonzalez's Motion to Exclude Admission of Photographs (ECF No. 53) is **DENIED**.

It is further **ORDERED** that Juarez's Motion to Suppress (ECF No. 50) is **DENIED**.

It is further **ORDERED** that Juarez's Motion to Exclude Evidence of Statements (ECF No. 51) is **GRANTED**.

It is further **ORDERED** that Gonzalez's Motion for Determination of Status (ECF No. 47) is **GRANTED** and that Gonzalez, should he be convicted, would be subject to the career offender enhancement under U.S.S.G. § 4B1.1.

Dated: November 19, 2014                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 19, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS