UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                  Case No. 13-cr-20813

v.                                               Honorable Thomas L. Ludington

D-2 JONATHAN ORTIZ CORONADO,

        Defendant.

_____/

**ORDER DENYING MOTIONS TO SEVER OR SUPPRESS**

Defendant Jonathan Ortiz Coronado was indicted with Defendant Angelo Adam Gonzalez on November 6, 2013 on one count of Conspiracy to Distribute Cocaine, 21 U.S.C. §§ 846 and 841(a)(1). ECF No. 14 at 1. Defendant David Juarez was later joined in a superseding indictment on February 12, 2014. ECF No. 22.

Following the superseding indictment Coronado moved to sever himself from Gonzalez and Juarez. ECF No. 31.[1] Coronado alleges that the indictment against him should be severed from the indictment against Gonzalez and Juarez for two reasons. First, the introduction of a phone call between Gonzalez and Juarez following Gonzalez' arrest would violate *Bruton*. Second, the introduction of photographs taken from cell phones seized at the time of the arrest would unfairly prejudice him and prevent a jury from fairly adjudicating his case.[2] In the

---

[1] Coronado renewed this claim in a Motion to Sever or Suppress. ECF No. 49. The government timely responded to both motions. ECF Nos. 33 and 74. Because the substance of Coronado's first and second motions are substantially similar, the Court will treat the second motion as encompassing the entirety of Coronado's legal claims. Any resolutions with respect to the legal claims in the second motion (ECF No. 49) will apply equally to those in the first (ECF No. 33).

[2] On September 8, 2014, a hearing was held on a series of motions filed by Defendants Gonzalez and Juarez. During that hearing the government indicated that they would identify the specific photographs out of those taken from Gonzalez's phone that they intended to offer at trial. Pursuant to that identification the Court ordered a round

alternative, Coronado asks that if he is not severed both pieces of evidence be excluded.[3] His arguments are without merit since there is no valid ground for severance or exclusion. The phone call between Gonzalez and Juarez is not testimonial and does not violate *Bruton*. Further, the photographs do not create a risk of unfair prejudice. Lastly, there is no basis on which either piece of evidence may be excluded at this time.

**I.**

In the February 12, 2014 indictment, the government alleges that Defendants Gonzalez, Coronado, and Juarez "beginning on a date unknown and continuing until on or about October 6, 2013 . . . knowingly and voluntarily combined, conspired, confederated and agreed together . . . to distribute cocaine and possess with intent to distribute cocaine" in violation of 21 U.S.C. §§ 846 and 841(a)(1). ECF No. 22 at 1-2. The bases for Coronado's Motion to Sever or Suppress are two items of evidence: a recorded phone call from Gonzalez to Juarez placed from a jail phone on October 3, 2013; and a series of photographs obtained from cell phones taken from the vehicle at the time of Coronado's and Gonzalez' arrests. ECF No. 49.

**A.**

On October 3, 2013, Michigan State Police Troopers Meder and Greenert stopped a black pickup truck traveling westbound on Remington Street in Saginaw, Michigan, for driving without its headlights on. ECF No. 1. The vehicle is allegedly owned by David Juarez and was occupied on the night in question by Gonzalez and Coronado. ECF No. 33. As the truck came to a stop, Coronado exited the rear of the vehicle and began to flee south on foot. ECF No. 1 at 2.

---

of supplemental briefing clarifying Gonzalez's and Juarez's objections to the specific photographs after they were identified. Because Coronado also objects to the admissibility of the photographs at trial, in the event he is not severed, the Court also directed Coronado to participate in the supplemental briefing. On September 22, 2014, Coronado filed his supplemental brief reiterating his initial objections to the photographs. ECF No. 80. The government responded to his objections on October 6, 2014. ECF No. 86.

[3] Coronado does not clearly indicate which pieces of evidence he wants excluded or his bases for exclusion.

Coronado was "carrying a brown colored shopping bag." *Id*. Both troopers pursued Coronado to a fence along the south side of a house located on the southeast corner of Warren Street and Remington Street. *Id*. Upon reaching this fence, Coronado threw the brown paper bag over the fence and lay down on his stomach. *Id*. He was then arrested by Trooper Greenert. *Id*.

The bag Coronado threw over the fence was retrieved shortly thereafter by Trooper Meder. ECF No. 1 at 2. Trooper Meder found several pieces of plastic in the bag that "appeared to be consistent with wrappings commonly found on one kilogram packages of cocaine." *Id*. A field test for the presence of cocaine performed on the inside of one of the wrappings yielded positive results. *Id*. Trooper Meder returned to the vehicle and detained the driver, Virginia Mercedes Betancourt, and Gonzalez.[4] *Id*. at 3.

**B.**

The government alleges that two cell phones were found in the vehicle during the stop on October 3, 2013. ECF No. 33 at 2. The cell phones were seized and searched pursuant to a warrant. *Id*. On the phones were numerous photographs "of Gonzalez and others holding firearms and cash, including a machine gun." *Id*. at 3. Coronado contends that the phones belonged to the Co-Defendants and that "there is no reference to Defendant Coronado in these pictures." ECF No. 49 at 5. Both sides appear to agree that Coronado does not appear in any of the photographs. See ECF No. 33 at 3; ECF No. 49 at 5.

**C.**

Later on October 3, 2013, Gonzalez placed a call from Saginaw County Jail to a number later identified as belonging to Juarez. See ECF No. 1 at 3, and ECF No. 33 at 2. This phone call

---

[4] The Complaint, ECF No. 1, states only that the three subjects of the stop were detained. The Court infers from their later presence in the Saginaw County Jail that all three were arrested at the end of the stop when the complaint indicates they were detained.

was recorded. During the phone call, Gonzalez informs Juarez that he and Coronado had been stopped, "little dog" (Coronado) ran, and the police got the "stuff." ECF No. 1 at 4. Both Juarez and Gonzalez expressed concern about being connected to the contraband found during the stop. *Id*. At another point in the conversation Juarez "asked Gonzalez where the other 'stuff' was located, to which Gonzalez responded, 'they are where they are always . . . with the sandwiches.'" *Id*.

## II.

Coronado raises two distinct claims in his Motion to Sever or Suppress. First, he claims that the evidence of the phone call and the photographs is so prejudicial that he cannot be fairly tried with Gonzalez and Juarez. Second, he claims that, in the event his case is not severed, Juarez's jailhouse phone call cannot be admitted against him since it violates his Sixth Amendment right to confront the witnesses against him. In the alternative, the phone call and the photographs taken from Gonzalez's cell phone should not be admitted against him because they are more prejudicial than probative. The two arguments will be taken in turn.

### A.

Pursuant to Rule 8 of the Federal Rules of Criminal Procedure, an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . constitute parts of a common scheme or plan." FED. R. CRIM. P. 8. "For the sake of promoting efficiency and avoiding the potential for inconsistent verdicts, joint trials of defendants who are indicted together are actually encouraged rather than discouraged." *United States v. Cope*, 312 F.3d 757, 779 (6th Cir. 2002) (citing *Zafiro v. United States,* 506 U.S. 534, 537 (1993)). The benefits of a joint trial are enhanced when the defendants are charged with participating in a conspiracy. *See Cope*, 312 F.3d at 780 (citing *United States v. Weiner,* 988 F.2d 629, 634 (6th

Cir.1992)). Coronado has been indicted jointly with Gonzalez and Juarez on a charge of criminal conspiracy to distribute a controlled substance, drawing him squarely within *Cope*'s rationale for promoting joinder.

Coronado argues that he has compelling reasons to be severed from Gonzalez and Juarez. Severance of joined defendants is governed by Rule 14 of the Federal Rules of Criminal Procedure. When "a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief justice requires." FED. R. CRIM. P. 14(a). The standard for severance under Rule 14 is not mere prejudice but rather whether "there is a *serious risk* that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539 (emphasis added). Such prejudice does not erect an insurmountable bar to a joint trial; for example, the harm wrought by the prejudice of a joint trial may be cured through a trial court's limiting instructions. *See Cope*, 312 F.3d at 780 (citing *Zafiro*, 506 U.S. at 539).

For Coronado to succeed in his motion to sever, he must show either: (1) that joinder will prejudice or threaten a fundamental trial right, or (2) that he will suffer a heightened form of prejudice resulting in an unfair adjudication of his case by a jury. Coronado stakes both claims with respect to his motion to sever and so both will be addressed in turn.

**1.**

Coronado first alleges that if he is not severed then his right to confront the witnesses against him will be unfairly threatened. Coronado explains that if the phone call from Gonzalez to Juarez is admitted, his Sixth Amendment Right to Confrontation will be endangered.

Where a defendant's right to confront the witnesses against him will be compromised by a joint trial, severance may be proper. *See Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987). The admission of testimonial hearsay by a co-defendant who is not testifying against a defendant at a joint trial violates the defendant's right of confrontation. This was the issue decided in *Bruton*. There, the Supreme Court determined that the defendants could not be fairly tried together without violating the Sixth Amendment because each would have their own confession, which implicated the co-defendant, admitted against them. *See Bruton v. United States*, 391 U.S. 123, 133-34 (1968). The inability of either defendant to guard against being implicated by his co-defendant's confession led to a violation of the Confrontation Clause. *Id.* (holding that references to the defendant in the confession had to, at a minimum, be redacted to avoid violating the Confrontation Clause). The trial court, however, could remedy a potential violation by redacting references to the defendant (the remedy discussed in *Bruton*), severing the defendants, *Richardson v. Marsh*, 481 U.S. at 209-10, or employing two different juries to hear the evidence against each defendant. *See United States v. Lemieux*, 436 F.Supp.2d 129 (D.Me. 2006) (empanelling two juries to separately try defendants in one proceeding). Coronado claims that he will be situated identically to *Bruton* if the phone call is admitted and so must be severed.

Coronado asserts that the phone call placed by Gonzalez to Juarez and recorded by law enforcement amounts to testimonial hearsay, triggering *Bruton*'s protections. It should be noted that *Bruton*'s holding was exceedingly narrow. Bruton applied only to instances where a co-defendant's confession, admitted properly against the co-defendant, implicated the defendant in the charged offense. But, the scope of *Bruton* was later expanded to include any and all testimonial statements by co-defendants which, admitted against the co-defendant at trial, inculpated the defendant in the crime. *See Cope*, 312 F.3d at 780. Despite this expansion,

Coronado's argument concerning the phone call is meritless. For Coronado to have colorable claim to a *Bruton* violation he must show, first, that the statements by Gonzalez were testimonial and, second, that they fall outside any relevant hearsay exception or exclusion. Coronado cannot make either showing.

The primary concern of the Confrontation Clause is the admission of testimonial evidence that is not subject to cross examination by the criminal defendant. It is a necessary prerequisite that testimony challenged under the Confrontation Clause be testimonial because non-testimonial evidence does not engender Confrontation Clause protections.

In *United States v. Cromer*, the Sixth Circuit set forward what has become the prevailing test in the circuit for determining testimoniality: "The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." 389 F.3d 662, 675 (6th Cir.2004). Under this test, phone calls placed from prison between co-defendants are not testimonial. *See United States v. Thurman*, 915 F. Supp. 2d 836, 854-55 (W.D. Ky. 2013). *Thurman* is instructive. There, two prisoners had phone conversations while in jail that were recorded and offered against them and both moved to exclude the calls. The district court applied the *Cromer* test and held that while there may be an awareness of the fact that the calls would be recorded and possibly used, the defendants were not bearing testimony against one another, in the language of *Cromer*. *See Thurman*, 915 F. Supp. 2d at 854-55. Here, Coronado has made no showing that the statements by Gonzalez to Juarez were testimonial and the weight of authority stands against him.

Yet Coronado's case is one step removed from *Thurman*. Unlike in *Thurman*, where one of the individuals involved in the discussion sought to suppress the discussion, Coronado was a subject of Gonzalez's and Juarez's conversation. This does not change the analysis under *Cromer*. As the court in *Thurman* recognized, the fact of placing a phone call from jail that you are aware may be recorded is, in itself, non-testimonial. *See Thurman*, 915 F. Supp. 2d at 854-55. Because a third party challenges the statements they do not become testimonial. *See United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005) (holding that statements between two individuals implicating a third party defendant are not testimonial). Coronado's absence from the phone call does not create testimoniality and he does not allege that Gonzalez and Juarez were conversing with the intent to bear testimony against him. Thus, the phone call is not testimonial and this Court need not reach the *Bruton* analysis.

Even if the call is testimonial, as Coronado alleges, he is also unable to show that the statements fall outside of any relevant hearsay exception. The government rightly points out in their brief that testimonial hearsay otherwise barred by the Confrontation Clause raises no Sixth Amendment issues where it fits within a hearsay exception or exclusion. *See Bourjaily v. United States*, 483 U.S. 171, 183 (1987). Statements that fit firmly within the co-conspirator exception to the hearsay rule do not give rise to a separate Confrontation Clause challenge. *Id*.

Here, the government alleges Coronado's participation in a conspiracy to distribute a controlled substance. Any statements made in furtherance of the conspiracy would fall within the non-hearsay exclusion for co-conspirator statements. Because the statements are not hearsay, the Confrontation Clause is not violated and the *Bruton* remedies are inapplicable. Though the Confrontation Clause and *Bruton* are not violated by the statements, they can still lead to a Rule

14 severance if they introduce substantial prejudice at trial. This brings the Court back to its earlier analysis while also leading it into Coronado's next claim.

**2.**

Coronado's second claim for severance centers on the photographs taken from cell phones seized during the stop. He alleges that he has no connection to these photographs and so their introduction "would prejudice [him] as it would attempt to link him to activity which he is not involved in." ECF No. 49 at 6. The Sixth Circuit has termed such an effect as "spillover." *United States v. Moore*, 917 F.2d 215, 221 (6th Cir. 1990). Spillover is where a jury will not be able to properly compartmentalize evidence against each individual defendant. *See United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987). But to prove such unfairness Coronado would need to show that a joint trial would produce "specific and compelling prejudice." *United States v. Gallo*, 763 F.2d 1504, 1526 (6th Cir. 1985). "Merely because inflammatory evidence is admitted against one defendant, not directly involving another codefendant (and with which the other is not charged) does not, in and of itself, show substantial prejudice in the latter's trial." *Gallo*, 763 F.2d, 1526; *see also United States v. Reeves*, 674 F.2d 739 (8th Cir. 1982), *United States v. Losada*, 674 F.2d 167 (2d Cir. 1982). Limiting instructions exist to cure this exact sort of prejudice.

The inclusion of the photographs in evidence at trial against his Gonzalez and Juarez would not "prevent the jury from making a reliable judgment about [Coronado's] guilt or innocence." *Zafiro*, 506 U.S. at 539. Limiting instructions are designed to cure such prejudice. Coronado's case, however, is even less compelling. He does not provide any authority for excluding the phone call or the photographs, both of which he claims are unduly prejudicial. The government, on the contrary, argues that at least the phone call is admissible against Coronado.

ECF No. 74 at 6. The possibility that both pieces of evidence may be admissible against Coronado further weakens his claim to severance and this possibility will be discussed below. *See United States v. Capps*, 48 F.3d 1220, *5 (6th Cir. 1995) (noting that evidence of acts in furtherance of a conspiracy is relevant evidence and admissible against all co-conspirators).

**B.**

Coronado's second claim is made in the alternative: if the Court does not sever him from the other defendants, it should exclude both the statements made in the phone call and the photographs. Defendant's exact claim for relief is not immediately apparent. Coronado alleges a *Bruton* violation in his request for exclusion of the phone call; however *Bruton* violations are not cured by the exclusion remedy. *See supra* § II.A.1 (discussing the three possible remedies for a *Bruton* violation). In any event, the phone call does not violate *Bruton*. There is likewise no independent ground for suppression evident from Defendant's submissions. The final possibility is that Coronado, as the government contends in their brief, seeks exclusion of the statements and photographs as an evidentiary matter. The Court will take this as the most probable argument. This argument still does not succeed, however.

**1.**

For the reasons set out above, the phone call does not trigger a Confrontation Clause violation.[5] This being so, the only means of exclusion would be through the Federal Rules of Evidence. Defendant asserts in his submission that "statements made by a codefendant cannot be used against another codefendant." ECF No. 49 at 6. Contrary to Coronado's assertion, however, there is a well-recognized exception to the hearsay rule for statements by co-conspirators. FED. R. EVID. 801(d)(2)(E). Under this rule, "[a] statement is not hearsay if . . . [t]he statement is

---

[5] The photographs also do not violate the Confrontation Clause and Coronado makes no contention on this point.

offered against a party and is . . . a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy." *Id*. The Court may look at the statement itself when considering admissibility. *United States v. Salgado*, 250 F.3d 438, 459 (6th Cir. 2001) (citing *Bourjailly*, 483 U.S. at 191; *United States v. Maliszewski*, 161 F.3d 992, 1008 (6th Cir. 1998)).

"The 'in furtherance' rule is . . . satisfied when a co-conspirator is apprised of the progress of the conspiracy and when statements are made to keep a conspirator abreast of a co-conspirator's activities, or to induce continued participation in a conspiracy, or to allay [his] fears." *Id*. at 450 (internal quotation marks omitted) (citations omitted). Gonzalez's statements to Juarez fall under this hearsay exception. Gonzalez's aim in placing the call was to "keep [Juarez] abreast of a co-conspirator's activities." *Id*. Namely, that he and Coronado were arrested. Should Coronado be shown to be in a conspiracy with Juarez and Gonzalez then the statements made in the phone call would be admissible against him for their truth. The initial determination that a conspiracy existed must be satisfied as a predicate matter, however.

Evidence, such as the phone call, admitted under Federal Rule of Evidence 801(d)(2)(E) must be admitted conditionally under Federal Rule of Evidence 104(a) in order to be used at trial. *See United States v. Enright*, 579 F.2d 980, 984 (6th Cir. 1978) (holding that Rule 104(a), not (b) governs preliminary determinations of the admissibility of hearsay). Rule 104(a) provides that "the court must decide any preliminary question about whether . . . evidence is admissible." In *Enright*, the Sixth Circuit set forth the test for determining whether co-conspirator hearsay statements are conditionally admissible.

> Under the *Enright* test, before a statement by a co-conspirator can be admitted as non-hearsay pursuant to Fed.R.Evid. 801(d)(2)(E), the party offering it must show by a preponderance of the evidence that (1) the conspiracy existed; (2) the defendant was a member of the conspiracy; and (3) the co-conspirator's statements were made in furtherance of the conspiracy.

*United States v. Ervin*, 266 F. App'x 428, 433-434 (6th Cir. 2008). The government carries the burden of showing that this initial proof is satisfied. *Id*. Enright contemplates this determination being made by the Court prior to trial. *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir. 1979). The benefit of the *Enright* procedure is that it results in a definitive determination of admissibility. It also "avoids 'the danger . . . of injecting the record with inadmissible hearsay in anticipation of proof of a conspiracy which never materializes.'" *Vinson*, 606 F.2d at 152-53 (quoting *United States v. Macklin*, 573 F.2d 1046, 1049 n. 3 (8th Cir. 1978))

But there are drawbacks to the preliminary Enright determination. One of them is that the determination "may also coincide with an ultimate question of fact for the jury" as it does here. *Enright*, 579 F.2d at 986. The *Enright* court thought this an acceptable risk but the *Vinson* court advised that it is "not . . . appropriate to set forth hard and fast procedures" regarding the order of proof at trial. *Vinson*, 606 F.2d at 152. As such, *Vinson* contemplated three different procedures for handling hearsay. A district judge may do so "(a) after the government has established the conspiracy by a preponderance at the trial, or (b) at a "mini-hearing," or (c) conditionally subject to connection." *Vinson*, 606 F.2d at 153. The warnings of *Enright* and *Vinson* are well-heeded, but sufficient facts have been provided to determine preliminarily, for the purposes of admission at trial, whether a conspiracy existed by a preponderance of the evidence. It does.

To prove a conspiracy existed, the government must show: "First, that two or more persons conspired or agreed" to distribute and possess with intent to distribute cocaine; "Second, that the defendant knowingly and voluntarily joined the conspiracy." 6th CIR. PATTERN JURY INSTR. CRIM. Chapter 14.05. Agreement "does not require proof of any formal agreement, written or spoken." *Id*. "An agreement can be proved indirectly, by facts and circumstances which lead to a conclusion that an agreement existed." *Id*.; *see also United States v. Avery*, 128

F.3d 966, 971 (6th Cir. 1997). "Although mere presence at the crime scene is insufficient to show participation, a defendant's participation in the conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to the circumstances." *United States v. Salgado*, 250 F.3d 438, 447 (6th Cir. 2001).

Sufficient evidence has been presented to conclude by a preponderance of the evidence that Coronado willfully agreed to enter into a conspiracy to violate the drug laws. His presence in Juarez's vehicle with Gonzalez and subsequent flight that led to the discovery of drug paraphernalia is circumstantial evidence of the type contemplated in the Pattern Jury Instructions. *See Salgado*, 250 F.3d at 448 (finding that the association of a defendant with large quantities of drugs is a significant factor that a reasonable jury could use to conclude participation in the conspiracy).

Furthermore, the Court may look at the statements themselves. *See Vinson*, 606 F.2d at 153 ("[W]hatever procedure a District Judge uses, the hearsay statements themselves may be considered by the judge in deciding the preliminary question of admissibility.") The statements only serve to further bolster the government's position. Coronado was directly implicated by the statements in the drug operation. Gonzalez told Juarez that "little dog" (Coronado) ran and also that the remaining "stuff" was on Coronado's bed with the "sandwiches." ECF No. 33, Gov. Resp. Br. at 6. While 'bootstrapping' must be carefully avoided, combining the statement of Gonzalez identifying Coronado and Coronado's involvement in the conspiracy with the circumstantial evidence of Coronado's behavior at the time of the arrest, the Court finds that a conspiracy existed by a preponderance of the evidence. *See United States v. Clark*, 18 F.3d 1337, 1342 (6th Cir. 1994) (statements identifying participants in the conspiracy are "in furtherance" of the conspiracy). For that reason, Coronado's motion will be denied to the extent it relies on the

claim of hearsay to exclude the statements. The statements are admissible at trial and will be submitted to the jury for consideration with an instruction that such consideration is dependent on the government meeting their burden of proof at trial.

**2.**

The only remaining tool of exclusion for Coronado would be Rule 403's bar on evidence that is more prejudicial than probative. Neither side has addressed the relevance of such statements to Coronado's case. Considering the foregoing, however, *supra* § II.B.1, the irrelevance of the statements is dubious because they are probative of Coronado's knowledge of and involvement in the charged conspiracy.

The photographs taken from Gonzalez's phone are subject to the same Rule 403 analysis. Coronado claims that the photographs should not be admitted against him because he is not depicted in any of the photographs the government seeks to admit. Coronado claims that a limiting instruction would be insufficient to cure the prejudice that would result from the photographs being admitted into evidence, ECF No. 80 at 2, but as discussed above, *supra* § II.A.2, the photographs are not a cause for severance. Coronado must rely, in the alternative, on the wholesale exclusion of the photographic evidence, or a limiting instruction. To the extent Coronado requests either instruction, his motion will be denied.

As referenced above, evidence admissible against a co-conspirator at trial is admissible against any other co-conspirator. *Capps*, 48 F.3d 1220, *5. If the photographs are relevant to the government's drug charges against Gonzalez they are admissible against Coronado.[6] "The admission of photographs is a matter within the sound discretion of the trial court" and adheres to the same balancing test. *Giblin v. United States*, 523 F.2d 42, 44 (8th Cir. 1975). Gonzalez, in

---

[6] The Court has already made the preliminary determination that conspiracy evidence is provisionally admissible against Coronado. *See supra* § II.B.1.

a separate motion not considered here, objects to the admission of the photographs taken from his phone because they will unduly prejudice him by portraying him as a gangster through the depiction of guns, money, tattoos, and other associated objects and paraphernalia.

The admission of gang evidence "raises the specter of guilt by association" but "the risk of prejudice associated with gang evidence does not render it automatically inadmissible." *United States v. Santiago*, 643 F.3d 1007, 1011 (7th Cir. 2011). The traditional Rule 403 balancing test still applies and gang evidence that is more probative than prejudicial is admissible. *Id*. The Sixth Circuit "has held many times that guns are 'tools of the trade' in drug transactions." *United States v. Hardin*, 248 F.3d 489, 499 (6th Cir. 2001). The possession of large amounts of cash is similarly relevant to drug prosecutions. *See United States v. Mohammad*, 501 F. App'x 431, 443 (6th Cir. 2012). Likewise, using photographs of tattoos to prove gang affiliation and participation in a conspiracy is a permissible, probative use. *See Ruibal*, 2014 WL 198663, at *2 (collecting cases that approve of such use). In light of this authority, the photographic evidence is relevant and admissible against Gonzalez, see ECF No. 92, and so, by extension, is admissible against Coronado.

### III.

Accordingly, it is **ORDERED** that D-2 Coronado's Motion to Sever or Suppress (ECF No. 49) and Motion to Sever (ECF No. 31) are **DENIED**.

Dated: November 19, 2014                     s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 19, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS